Kristine K. Alonge
23604 Cantrell RD
Tonganoxie, KS 66086
(785) 917-0796
k.alonge@sbcglobal.net

*Pro se*

### IN THE UNITED STATES DISTRICT COURT

### THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLANET AID INC., and LISBETH THOMSEN ) | Case No. 18-mc-80139-MMC |
| ) | |
| Plaintiffs, ) | |
| vs. ) | |
| ) | Related to |
| REVEAL, CENTER FOR INVESTIGATIVE ) | Case No. 17-cv-03965-MMC |
| REPORTING, MATT SMITH, and AMY ) | |
| WALTERS ) | Hon. Jacqueline S Corley |
| Defendants ) | |
| _____) | |

**REPLY TO PLAINTIFFS' SUGGESTION IN OPPOSITION TO NONPARTY KRISTINE K. ALONGE'S MOTION TO QUASH AND/OR MODIFY SUBPOENA DUCES TECUM AND/OR TRANSFER THE MOTION TO THE NORTHERN DISTRICT OF CALIFORNIA**

I, Kristine K. Alonge, a nonparty in Case No. 17-cv-03695-MMC and Movant in Case No. 18-mc-80139-MMC, respectfully submit the following Response to Plaintiffs' Suggestions in Opposition ("Opposition") to the Motion to Quash and/or Modify Subpoena Duces Tecum and/or Transfer the Motion to the Northern District of California ("Motion").

**Jurisdiction**

1.    The Subpoena Duces Tecum ("Subpoena") at question pertains to Case No. 17-cv-03695-MMC and was issued in the US District Court, Northern District of California where the case is currently pending. The original place of compliance for the

1

Subpoena was Kansas City, Missouri. The Western District of Missouri had jurisdiction over this action. FRCP 45(c)(2)(A)

2. On July 25th, 2018, I filed a Motion to Quash, Modify, or Transfer the Subpoena. The case number assigned was 4:18-mc-09013-SRB. On August 8th, 2018, Hon. District Judge Stephen R. Bough chose not to rule on the Motion, but instead signed an order transferring the jurisdiction to the Northern District of California. The Motion was transferred on August 21, 2018 where it was assigned Case No. 3:18-mc-80139 and sent to the Magistrate Court.[1]

**Background**

3. The related case, Case No. 17-cv-03695-MMC, is a civil lawsuit. Plaintiffs have made claims of defamation, journalistic negligence, conspiracy, and other actions due to a series of news articles and podcasts published by the Defendants: the respected news organization Center for Investigative Reporting ("Reveal") and two reporters, Matt Smith ("Smith") and Amy Walters ("Walters").

4. Planet Aid Inc. was founded in 1997 by members of a Danish organization commonly known as "Tvind," whose members are called the Teachers Group - an ideological collective based on Marxist and Maoist principals. Throughout Europe the terms "Tvind", "Teachers Group", "Humana", and "TG" are synonymous. Tvind runs an international conglomerate of alternative schools, businesses, financial institutions, and nominal humanitarian organizations. In general, the term "Teacher Group" is used when

---

[1] See Dkt #4

2

discussing the people involved, whereas "Tvind" refers to the organization and all of its entities as a whole.

5. Five members of the Teachers Group are wanted by Danish authorities on charges of fraud and serious economic crimes. Their profiles are on Interpol's Most Wanted list.

6. Planet Aid Inc., which has tax-exempt 501c3 status, is the largest money earner of Tvind's USA based operations. Planet Aid claims to raise funds for "development projects" primarily through the collection and resale of used clothing. However in recent years, most of its budgeted donation revenue is due to grants from the USDA, not from funds earned from used clothing sales.

7. Planet Aid Inc. sends most of its budgeted donation revenue to its affiliates abroad, primarily in Africa. Two of those affiliates, ADPP Mozambique and DAPP Malawi, were the direct recipients of USDA grants awarded to Planet Aid Inc. These affiliates and Planet Aid are members of a much larger umbrella group known as the Federation for Associations connected to the Humana People to People Movement ("Federation"). By contract, all members pay the Federation a percentage of their charitable funds, typically 6.5% of the budgeted donation revenue or $100,000.00, whichever amount is larger, for annual membership fees. Planet Aid has paid the Federation millions of dollars in membership and other fees. The Federation is registered in Switzerland but has its physical headquarters in Zimbabwe.

8. For more than a decade Planet Aid has obtained significant funding through several USDA grants, totaling over

$130M in taxpayer funds. These grants, and the alleged misuse of those funds, were the focus of an 18-month long investigation done by Reveal. The published articles, which detailed the findings of Smith, Walters and others, are at the center of the current lawsuit.

**Reply to Plaintiffs' Opposition**

9. Federal Rule for Civil Procedure 45 is clear as to what must be done, and what is not allowed, concerning a subpoena, including one served on a non-party. But Plaintiffs wasted no time in clouding the issue. Instead of presenting facts, Plaintiffs a.) took a key quote out of context, b.) made a disingenuous offer to narrow the subpoena, c.) misrepresented the inconvenience of court location, d.) disregarded my expertise, and e.) misquoted a simple email statement, all to further the false claim of "defamation" to justify the need for my information. I now must defend myself against those statements.

**a. A key quote is taken out of context**

10. I have researched Tvind for many years and have shared my findings with a number of government agencies including the USDA. Because of these efforts, Defendants Smith and Walters asked me for an interview.[2] The following quote from that interview was published in Defendants' May 23, 2016 article[3]:

> "You don't give millions of dollars to a group that is being investigated for fraud, tax evasion and pilfering of humanitarian funds," Alonge said, "but that is precisely what the USDA did."

---

[2] The Defendants were also provided numerous background documents.
[3] FAC Exhibit B also available at https://www.revealnews.org/article/us-taxpayers-are-financing-alleged-cult-through-african-aid-charities

4

Planet Aid was not specified in this quote, nor is the investigating authority mentioned. Yet the Plaintiffs erroneously conclude that the Defendants used this quote to make a false claim; that Planet Aid was under investigation by the FBI at the time the USDA awarded Planet Aid FAS grants. The Plaintiffs' conclusion is wrong. The "group" referred to in this quote is the Teachers Group, or Tvind. Though Planet Aid is a part of Tvind, it was Tvind, not Planet Aid individually, that was being discussed in the interview at the time that quote was made.

11. Suggestions of fraud within Tvind have existed for years prior to Planet Aid's USDA grants. When Planet Aid first obtained grants from the USDA, Tvind was under investigation by the Danish government and continues to be. Planet Aid was then, and still is, a Tvind organization and was mentioned in the Danish investigation Case Summary.[4] (Attached as Exhibit A) How well the USDA understood the Tvind/Planet Aid connection is questionable, but they knew of the Danish government's Tvind investigation and knew that Planet Aid was part of the Federation, a Tvind organization.  The USDA chose to ignore those red flags and failed to vet Planet Aid properly.

12. The USDA also knew that Planet Aid was a pass-through grantee. The funds were not used directly by Planet Aid.  The true recipients of funding were the Federation (in membership fees, facilitation fees, and contracts), fellow Federation

---

[4] See Sect. 6.2 of the Case Summary. Planet Aid Inc. loaned a fellow Tvind organization, The Gaia-Movement Living Earth Green World Action USA, Inc., a sum of $60,000 on June 1, 2000. This loan was documented in Gaia's 2001 audit.

5

members (such as DAPP Malawi and ADPP Mozambique), Tvind consulting services, and even individual Teachers Group members who were hired for funded projects and received salaries.

13. The aforementioned quote was taken out of context. Tvind was under investigation by the Danish government at the time the USDA approved those grants. The Plaintiffs are wrong in their conclusions. The facts do not support the Plaintiffs' "defamation" claim.

14. Plaintiffs further pushed their "defamation" claim by conflating my statement along with the FBI file from 2001-2002.

> "Ms. Alonge is also the source of statements supporting Plaintiff's case against Defendants. Defendants made much in their stories about the FBI receiving an MLAT request in 2001 from Danish authorizes seeking their assistance…" [5]

And,
> "Defendants also falsely claimed that Plaintiffs obtained such funds while at the same time allegedly "being investigated for fraud, tax evasion and pilfering of humanitarian funds." Defendants also wrote that the FBI investigation had "concluded" that Planet Aid was involved in a fraud."[6]

The erroneous conclusion pushed by Plaintiffs is simple: Plaintiffs state that Defendants made a factually false claim, that I was the source of this claim, and therefore defamation occurred. Again, the facts do not support this conclusion and do not justify obtaining my emails or information.

15. The Defendants published an email along with the May 23rd article. It was obtained from the USDA through a FOIA request. This email, sent by me to a USDA official soon after my

---

[5] *See* Opposition, par. 8

[6] *See* Opposition, par. 3

second FBI interview, clearly shows what I was told at that time - that there was very little funding in the FBI's budget for "white collar" crimes.[7] (Attached as Exhibit B) The email supports what the Defendants reported. It does not discount it or show contradicting information.

**b. A disingenuous offer to narrow the subpoena**

16. The Subpoena, served on July 13, 2018, demands all information that I have ever gathered on Tvind - ten years worth of research. The vast amount of this information is not relevant to this case and can be obtained though publicly available sources.  Relevant information, that which concerns the USDA grants and Plaintiffs associations and operations within the Tvind organization, is available directly from the Plaintiffs or through FOIA requests. The Defendants have posted online much of the relevant background information provided to them that were used in their articles. These documents have been available to the public for over a year, well before the Subpoena was issued. The Plaintiffs had no reason to request those same  documents from me.

17. I spoke with one of Plaintiffs' counsels, Sam Rosenthal, on the morning of July 17, 2018, after returning home from work.  I explained that relevant information was available elsewhere, mostly from the Plaintiffs. After a heated exchange, he expressed an interest only in emails to and from Defendant Smith. I agreed to speak with Rosenthal the following morning

---

[7] I was told that unless the money laundering had to do with drugs, guns, human trafficking, or terrorism, there wasn't funding available for the FBI to look into it.

when I returned home from work at 0800 hrs. Mr. Rosenthal was made aware that I worked night shift hours but did not call at 0800 hours on July 18th as he promised. I then sent a Letter of Objection via email and certified mail.

18. There were four emails from Plaintiffs' attorneys Sam Rosenthal and Cory Manning between July 18th and July 24th, 2018. All emails were answered and all of my replies were sent to Cory Manning as he was the attorney of record on the Subpoena.

19. Plaintiff's First Amended Complaint ("FAC") contains numerous false accusations. Tisha Thompson and Pam Fritzler were accused of being co-conspirators in a scheme[8], that I was part of this scheme[9], and that I was the source of defamatory remarks,[10] even as my quotes were taken out of context. Plaintiffs also claimed that because I had no "first-hand knowledge" of Planet Aid or the USDA I had no "expertise helpful to the articles."[11] Then why bother me for anything? Yet Plaintiffs bothered me for everything. First-hand knowledge is not necessary to gather information on a subject, and my expertise is precisely why the Defendants contacted me. But the Plaintiffs stoop to insults. Plaintiffs even presented a Letter to the Editor written by me in 2012 as one of Reveal's articles published in 2017![12] These false claims made by the Plaintiffs are used to justify obtaining information from me. But false claims justify nothing.

20. Plaintiffs also claim to show cooperation and a "willingness [to] narrow the subpoena in order to resolve the

---

[8] See FAC paras. 72 and 73
[9] See FAC para. 188
[10] See FAC para. 175
[11] See FAC para. 83 Then Plaintiffs should not demand anything from me at all.
[12] See FAC, par. 55, included there as Exhibit M

8

dispute without judicial intervention." However a quick review of the various offers shows a different picture. The Subpoena, served July 13, 2018, demands all information in my possession…ten years worth of research. On July 17th, Mr. Rosenthal requested only emails from Defendant Smith. The following day, July 18th, the offer was "only two categories of information: (1) communications and/or correspondence with Defendants, any employee of Defendant CIR, Pamela Fritzler and/or Tisha Thompson and/or the NBC I-Team or any of its employees or reporters; and (2) documents concerning or related to Defendants or any of the other entities, programs, or publications at issue in Plaintiffs' FAC."[13]  The final offer on July 24th was "communications with, or concerning, any of the following: (1) CIR, or any of its employees or reporters; (2) Pamela Fritzler [a co-conspirator identified in Plaintiffs' FAC]; and (3) Tisha Thompson and/or the NBC I-Team or any of its employees or reporters." The time frame was limited to communications since January 1, 2014, a full ten months before Defendant Smith's first email.[14] Since this time frame is before CIR's investigation began, the Plaintiff's expose what they are really after: communications that they believe would show a scheme and a conspiracy.

    21.   Plaintiffs then claim, "Similarly, any documents in Ms. Alonge's possession relating to the entities and/or persons at issue in Plaintiffs' FAC relate directly to the allegations

---

[13] See Opposition, par. 11 This offer, though worded differently, demands all of my information and is no different than the original subpoena.
[14] See Opposition, par. 15 Defendant Smith's first email was October 2014.

9

in the FAC." Also, "These documents cannot be obtained from another source."[15] However, Ms. Fritzler was served a subpoena similar to mine, yet Plaintiff's attorney, Sam Rosenthal, informed her on July 19th, 2018, that the subpoena had been *withdrawn*.

22.  After an unusual explanation as to why information from several people is only available through me, the Plaintiffs expose the truth:

> "NBC refuses to produce the communications between Ms. Alonge and the NBC I-Team or any of its employees or reporters." *Id.*

And,

> "Plaintiffs have sought discovery from Defendants, who have failed to respond."[16]

23. The Plaintiffs want information from me which was already in their possession or available on-line. They've made false accusations of co-conspiracy. They demand emails from me that they no longer want from Ms. Fritzler or have been refused by Ms. Thompson.  I maintain my original sentiment that any offer to narrow the request of the subpoena is disingenuous and is nothing but a ploy to give the impression of compromise.

**c. The inconvenience of court location**

24.  The Motion in question has been transferred to the Northern District of California. My objection with Missouri as

---

[15] See Opposition, pg 10
[16] See Opposition par. 5

the court location is no longer an issue. My concerns were never with the mileage as the Plaintiffs claim, but the choice of the Plaintiffs' counsel's Missouri office as the location to deposit the items demanded by the Subpoena. This forced the Western District of Missouri Court to have jurisdiction over the matter. I live in Kansas. The Plaintiffs' counsel has an office in Kansas that is the same distance as their Missouri office. The logical choice is therefore in Kansas. The 26-hour drive to San Francisco that Plaintiff's mentioned is a foolish argument. California levels the argument since filings are done electronically.

25. I am not the only person that Plaintiffs have inconvenienced. Pam Fritzler is a resident of Baltimore, MD. The original lawsuit from August 2016 was filed in Baltimore, MD. Plaintiffs have sought to transfer the lawsuit back to Baltimore, MD. Yet Ms. Fritzler was commanded – until the subpoena was withdrawn – to deliver items to Washington D.C.

26.  Plaintiffs may feign the "within the 100 mile" argument once and be forgiven for it. But to do it twice, and to the two individuals who are known to be experts on Tvind and critics of the Plaintiffs, shows a pattern of inconvenience.

**d. I am an expert and I have a right to my research**

27. Plaintiffs claim that I am a lay factual witness, not an expert witness. But Plaintiffs are in no position to judge my expertise on Tvind – they do not know the extent of my knowledge. Regardless of the Plaintiffs' opinion, I am considered to be an expert on Tvind, one of only a few in the USA. Because of this I believe that my information should be

11

protected and not given to the Plaintiffs. Should the Plaintiffs be given any of my information it would greatly hinder the purpose of my research.

28. Plaintiffs have expressed interested in my communications.

> "…the information sought describes specific events in dispute in the underlying case - Ms. Alonge's communications that formed the basis of subsequent defamatory statements alleged in the FAC"[17]

First of all, there have been no "defamatory" statements made, just ones the Plaintiffs don't like. In order to be considered "defamatory" a statement must be factually false. I have previously shown that this did not occur.[18] Secondly, the Plaintiffs, and Tvind, had been the subjects of numerous investigative news reports and articles long before the Defendants published the articles in question.[19]

29. Even though my communications to Defendants, to Tisha Thompson[20], and to Ms. Fritzler, would clearly demonstrate that no conspiracy occurred, I refuse to disclose my communications. I have a right to privacy and the freedom to associate with whomever I choose. I should not be forced to give up those rights, or any item of my research, to prove anything. The Plaintiffs have accused me of conspiracy. Let them now provide the proof.

**e. A misquoted statement**

---

[17] See Opposition, Exhibit 9
[18] See par. 10 - 15
[19] A simple internet search of 'Planet Aid Tvind' demonstrates this.
[20] I will disclose my one email sent to Ms. Thompson if she permits it.

12

30. Plaintiffs use a misquoted statement to discredit my efforts with the USDA. The misquote is as follows:

> "I am only willing to help you because my contempt for TVIND is greater than my contempt for the USDA."[21]

The correct quote is:

> "But make no mistake; I will only help you because my desire to evict Tvind from the USA is greater than my contempt for the USDA."[22]

In the same paragraph (10) the Plaintiffs discuss two other emails. In one, the USDA expressed concern about information from me and from Ms. Fritzler. In the other, the USDA reported that no problems had been identified. What the Plaintiffs want the court to believe is clear – the USDA consider Planet Aid as compliant. Any concerns from Fritzler or Alonge should be disregarded.

31. But the results of USDA audits and reports must be called into question. The failures of the USDA concerning the USDA grants are a main theme throughout the Reveal articles. The USDA has been found lacking in their ability to evaluate the very programs – the FAS grants – that Tvind has benefitted from. USDA's deficiencies have occurred for over a decade. On July 9, 2015, Mr. Rod Desmet, a Deputy Assistant Inspector General for Audit, gave a damning review of the USDA's monitoring of the FAS grants:

---

[21] See Opposition, Exhibit 9
[22] See Exhibit B. This is a true copy of the email sent to Ron Croushorn.

> "Based on our reports, together with reports from GAO and independent consultants, we believe that, until FAS significantly strengthens its management oversight and accountability, it cannot ensure that Federal resources expended on food assistance programs are used efficiently and effectively to relieve global food crises and encourage economic development." (Attached as Exhibit C)

It's clear that the USDA has many problems with evaluating the accountability and effectiveness of the FAS grants. These problems have persisted for many years. My concerns about the USDA and their grants to Planet Aid are certainly justified.

**Conclusion**

32. I reaffirm the arguments set forth in the Motion to Quash filed July 25, 2018, except for those against the choice of courts as the Motion has been transferred to the Northern District of California.

33. Plaintiffs issued a subpoena demanding information from me. They claim my information is relevant to their case and can only be obtained from me, even though relevant information is available through other means. The emails that they demand occurred before the investigation by the Defendants even began, and are meant to show a "conspiracy" took place. The Plaintiffs' case is filled with accusations that I engaged in co-conspiracy, that I made false defamatory remarks, and that I was the source of defamatory remarks made by others. Using facts, and exposing the Plaintiffs' errors, I have shown that the Plaintiffs' claims are without merit and they are wrong to have made them. Plaintiffs are also wrong in using my Motion to Quash as a venue to perpetuate their false accusations.

14

34. Plaintiffs should not be awarded costs should the court rule in their favor. Plaintiffs made severe accusations against me in their FAC. As a non-party to Case No. 17-cv-03695-MMC I did not receive the case files. I became aware of these accusations on my own by purchasing case files through PACER. No one informed me. I take these accusations against me very seriously. Plaintiffs should not have accused me in a manner that I could not publically respond to. Case files are accessible to the public for a small fee. Anyone researching Planet Aid, or Tvind, could have read the Plaintiffs' false accusations against me. My Motion was filed to quash a subpoena for reasons previously stated. Without this Motion I could not have defended myself against the Plaintiff's accusations.

35. I respectfully request that my Motion to Quash be granted.

Respectfully submitted October 31, 2018

*// s //*

_____
Kristine K. Alonge

**CERTIFICATES OF SERVICE**

   This is to certify that I have served upon counsels of record the following via ECF:

Reply to Plaintiffs' Suggestion in Opposition to Non-party Kristine K. Alonge's Motion to Quash and/or Modify Subpoena Duces Tecum and/or Transfer the Motion to the Northern District of California

Dated: October 31, 2018

Respectfully submitted,

                                             *Pro Se*

                                             */ s /*

                                      _____
                                                Kristine K. Alonge
                                               23604 Cantrell Rd
                                            Tonganoxie, KS 66086
                                                  785.917.0796
                                         k.alonge@sbcglobal.net