# Exhibit C

UNITED STATES DEPARTMENT OF AGRICULTURE

OFFICE OF INSPECTOR GENERAL

## STATEMENT OF ROD DESMET
## DEPUTY ASSISTANT INSPECTOR GENERAL FOR AUDIT

Before the

House Committee on Agriculture

Subcommittee on Livestock and Foreign Agriculture

U.S. House of Representatives

**JULY 9, 2015**



Good morning, Chairman Rouzer, Ranking Member Costa, and Members of the Subcommittee. I thank you for inviting me to testify before you today to discuss the Office of Inspector General's (OIG) oversight of the Department of Agriculture's (USDA) Food for Progress Program. As you know, a large part of OIG's mission is to promote the efficiency and effectiveness of USDA programs, such as Food for Progress, by performing audits to reduce fraud, waste, and abuse. Our audits are designed to determine if a program is functioning as intended, if program payments are reaching intended recipients, and if funds are achieving their intended purpose. When we identify problems, we make recommendations that we believe will help USDA agencies better accomplish their missions.

To avert famine and encourage economic development, USDA supports food aid programs in many countries worldwide. Within the Department, the Foreign Agricultural Service (FAS) is responsible for administering food aid programs through several program authorities. The first is Public Law 83-480, Titles I and II,[1] which are the primary means by which the United States provides foreign food assistance. Another is the McGovern-Dole International Food for Education and Child Nutrition Program (McGovern-Dole Program),[2] which supports the donation of U. S. agricultural commodities as well as financial and technical assistance to carry out school meal programs in foreign countries. Maternal, infant, and child nutrition programs also are authorized under the McGovern-Dole Program. The Food for Progress Program, which is the topic of this hearing, was authorized by the Food for Progress Act of 1985.[3] This Act authorizes the provision of U. S. agricultural commodities to both developing countries and emerging democracies with demonstrated commitments to free enterprise in their agrarian economies.

---

[1] Agricultural Trade Development and Assistance Act of 1954, 83 Pub. L. No. 480.
[2] 7 U.S.C. § 1736o-1.
[3] 7 U.S.C. § 1736o.

1

FAS administers the Food for Progress Program through agreements with foreign governments, nonprofit agricultural organizations, cooperatives, intergovernmental organizations, and private voluntary organizations (PVOs). PVOs are charitable, non-profit organizations. The Food for Progress Act provides for the use of Commodity Credit Corporation (CCC) funding for commodity procurement, transportation, and associated non-commodity program costs. For fiscal year 2016, the Department plans to budget $135 million in CCC funding for the Food for Progress Program. Under this program, participants use the donated commodities (or proceeds from the monetization of such commodities) to promote humanitarian and developmental activities, pursuant to their agreement with CCC. CCC funds are used to cover expenses involved in the administration and monitoring of the food aid activities under the agreements. Congress reauthorized the Food for Progress Program in the Agricultural Act of 2014.[4]

Within FAS, the Office of Capacity Building and Development (OCBD), Food Assistance Division (FAD) is responsible for administering and evaluating Food for Progress Program agreements from the proposal stage through the duration of the agreements. FAD's responsibilities include monitoring agreements through a review of required reports—including the receipt and disposition of donated CCC commodities—as well as in-country oversight of project operations and close-out reviews to assess the PVOs' administration of foreign food aid from start to finish.[5]

Since 1999, the Office of Audit has conducted a number of audits addressing FAS' administration of the food aid programs; our last report was issued in March 2014. In these audits, we have evaluated the effectiveness of FAS' implementation of its agreed-to corrective actions to earlier

---

[4] 113 Pub. L. No. 79, § 3201.
[5] OIG Audit 07601-0001-22, *Private Voluntary Organization Grant Fund Accountability*, March 2014.

2

audit recommendations. Although we have found improvements in FAS' administration of the Food for Progress Program, we continue to report systemic internal control weaknesses in FAS' administration of this Program. Many of these internal control deficiencies could have been mitigated if FAS had effectively implemented its agreed-to corrective actions in response to OIG's earlier recommendations. Furthermore, we have found a number of reviews—issued by the Government Accountability Office (GAO) and private consulting firms contracted by FAS—which report similar internal control weaknesses.

Specifically, we reported in 2006 that, although six of eight reviewed PVOs generally complied with their agreements, FAS' controls for monitoring PVOs could not provide reasonable assurance that USDA's program objectives were being met—or that funds were being spent appropriately. OIG concluded that, due to these internal control weaknesses, one PVO was not held accountable for violations of its grant agreements leading to the loss of $2.2 million. Although FAS learned about possible grant irregularities in November and December of 2000, it still had not, as of OIG's 2006 report, reviewed the PVO's compliance with its agreements.[6]

Several years earlier, in response to OIG's March 1999 audit, FAS agreed to strengthen significant aspects of its management controls. However, OIG's 2006 review found that the agency did not effectively implement corrective actions to address previously reported weaknesses in FAS' oversight of PVO agreements.[7] FAS officials explained that, though they had attempted to obtain adequate funding and staffing to review PVOs' use of agreement monies, they nevertheless had fallen short of the level of oversight recommended by OIG.

---

[6] OIG Audit 07016-1-At, *Foreign Agricultural Service Private Voluntary Organization Grant Fund Accountability*, March 2006.
[7] OIG Audit 50801-6-At, *FAS Food for Progress Program PVOs Grant Fund Accountability*, March 1999.

3

OIG commends FAS for taking several positive actions in response to the March 2006 audit, such as developing and implementing a Food Aid Information System for administering food aid agreements; providing staff training; issuing new regulations; and hiring consultants to assess management controls over food aid programs. However, many of the systemic deficiencies identified in our 1999 and 2006 audits persist. In our 2014 audit, OIG continued to report management control weaknesses in FAS' Food for Progress Program. For example, OIG reported that FAS does not have effective controls in place to monitor and close out its agreements with PVOs. Further, OIG found that FAS' internal controls did not ensure: (1) that PVOs reported financial information completely and accurately in their semiannual reports; (2) that PVOs established separate bank accounts to administer agreements; (3) that interest earnings on advanced CCC administrative funds held in interest-bearing accounts were reported and returned to FAS; and (4) that completed agreements were timely and properly closed out. These weaknesses resulted in questioned and unsupported costs totaling over $685,000. In response to these findings, OIG specifically recommended in 2014 that FAS designate a senior management official, who has sufficient authority, to ensure all current and prior recommendations are fully addressed in a timely manner.

In addition to OIG's findings in 1999, 2006, and 2014, GAO and a number of independent consultants contracted by FAS also have reported ongoing deficiencies with FAS' management controls and oversight. In May 2011, GAO issued an audit of FAS' McGovern-Dole Program and recommended that FAS establish a monitoring process for measuring program progress and develop policies and procedures for evaluating completed projects and closing out grant

4

agreements. FAS agreed with GAO's recommendations, acknowledging that proper monitoring and evaluation are essential to improving management oversight of the McGovern-Dole Program.[8]

FAS also has contracted with a number of independent consultants, who have found similar weaknesses in FAS' control environment. One of these consultants performed an internal control and corrective action assessment of the Food for Progress Program and the McGovern-Dole Program. In its 2013 report, this consultant found that, "FAS has made incremental progress towards remediating these [earlier reported] findings and recommendations; however, overall corrective actions have not been fully implemented and there remain several deficiencies that exist within current processes." This report also found that "the deficiencies identified in this assessment in addition to the recurring concerns identified in prior audits demonstrate that FAS still has significant internal control issues with respect to oversight and accountability of operations."[9]

Based on our reports, together with reports from GAO and independent consultants, we believe that, until FAS significantly strengthens its management oversight and accountability, it cannot ensure that Federal resources expended on food assistance programs are used efficiently and effectively to relieve global food crises and to encourage economic development. This concludes my written statement. I again want to thank the Subcommittee for the opportunity to testify today. I welcome any questions you may have.

---

[8] GAO-11-544, *International School Feeding: USDA's Oversight of the McGovern-Dole Food for Education Program Needs Improvement*, May 2011.

[9] Morgan Franklin Consulting, *Foreign Agricultural Service – Food for Progress and McGovern Dole Program Assessment*, September 2013.

5